| | | | |
|---|---|---|---|
| Case No. | **EDCV 19-647 JGB (SHKx)** | Date | June 12, 2019 |
| Title | *Maria Gast v. Universal North America Insurance Company, et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **Order (1) GRANTING Plaintiff's Motion to Remand (Dkt. No. 14); (2) DENYING AS MOOT Defendant's Motion to Dismiss (Dkt. No. 8) and Motion to Strike (Dkt. No. 7); (3) REMANDING the Case to the Riverside Superior Court; and (4) VACATING the June 17, 2019 Hearing (IN CHAMBERS)**

Before the Court are Defendant Universal North America Insurance Company's ("Universal") Motion to Strike Portions of the Complaint ("MTS," Dkt. No. 7) and Motion to Dismiss ("MTD," Dkt. No. 8) and Plaintiff Maria Gast's ("Plaintiff") Motion to Remand ("MTR," Dkt. No. 14) (collectively, "Motions"). The Court determines the Motions are appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motions, the Court GRANTS the MTR and DENIES AS MOOT the MTD and MTS. The hearing scheduled for June 17, 2019 is VACATED.

## I. BACKGROUND

**A. Procedural Background**

On December 28, 2018, Plaintiff filed a complaint against Universal North America Insurance Company ("Universal"), Jerry Siler (together, "Defendants"), and Does 1 through

20 in the Riverside Superior Court. ("Complaint," Dkt. No. 1 at 12–24.[1]) The Complaint contains three causes of action: 1) breach of the duty of good faith and fair dealing, 2) breach of contract, and 3) negligent misrepresentation.[2] (Compl.) On April 10, 2019, Universal removed the action to this Court, arguing that Plaintiff fraudulently joined Siler in order to defeat diversity jurisdiction. (See Notice of Removal ("NOR"), Dkt. No. 1 at 1–5.)

On April 17, 2019, Universal filed the MTD, seeking to dismiss Plaintiff's third cause of action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (MTD.) On the same day, Universal filed the MTS, requesting that the Court strike Plaintiff's request for punitive damages stemming from the third cause of action. (MTS at 11). On April 24, 2019, Plaintiff filed an opposition to the MTD. ("MTD Opp.," Dkt. No. 11.) On May 2, 2019, Universal filed a reply in support of the MTD. ("MTD Reply," Dkt. No. 13.) On May 10, 2019, Plaintiff filed the MTR.[3] On May 28, 2019, Universal filed an opposition to the MTR. ("MTR Opp.," Dkt. No. 17.) On June 10, 2019, Plaintiff replied. (Dkt. No. 18.)

**B. Factual Allegations**

Plaintiff alleges the following facts, which are assumed to be true for purposes of the MTD.

Plaintiff purchased from Universal a homeowner's insurance policy that provided dwelling coverage, personal property coverage, and loss of use coverage for her home in Murrieta, California. (Compl. ¶ 10.) On April 13, 2015, Plaintiff discovered that a pipe had burst, causing flooding to the foundation and soil underneath her house. (Id. ¶ 16.) Plaintiff reported the loss to Universal, which opened a claim and authorized a plumber to repair the leak. (Id.) After discovering that about 5,000 gallons of water had escaped from the pipe, Plaintiff hired an emergency services restoration company to prevent further damage to the property. (Id. ¶ 17.) The concrete slab remained wet, with a moisture content of about 80 to 90 percent, for over a year and a half after the pipe burst. (Id.)

About two weeks after the leak, the tile flooring began to crack. (Id. ¶ 18.) Universal authorized the removal of the tile. (Id.) Plaintiff sought an estimate to install new tile, but the contractors whom she asked refused to install new tile over the wet concrete slab. (Id. ¶ 19.) In

---

[1] Because Dkt. No. 1 contains the Notice of Removal, state court summons, Complaint, and exhibits to the Complaint, all of which have distinct pagination, the Court refers to the page numbers contained in the heading generated by the Electronic Case File ("ECF") system. When citing the Complaint, the Court will refer to the numbered paragraphs in the Complaint.

[2] Plaintiff brings the first two claims against Universal only and the third claim against all Defendants. (Compl.)

[3] Plaintiff failed to submit a chambers copy of the MTR, as required by the Court's Standing Order and Local Rule 5-4.5. Plaintiff is advised to comply with the Local Rules when filing future motions in federal court.

July of 2016, Plaintiff hired a structure/soils engineer, who found that the soil was wet. (Id. ¶ 20.) In December 2016, Plaintiff had the soil tested and found that it was still wet. (Id. ¶ 21.) Plaintiff's engineer recommended replacing the slab and the wet soil and shoring up the timber framing. (Id.) Plaintiff sought estimates to repair the house as recommended, but the contractors with whom Plaintiff spoke indicated they would need to tear the house down and rebuild it. (Id. ¶ 22.)

On July 14, 2015, Universal provided Plaintiff with an estimate in the amount of $17,603.87, taking into account only the costs of replacement of the tile, repair to the drywall, and painting. (Id. ¶ 23.) Plaintiff informed her adjuster, Siler, that that amount was insufficient to complete the necessary repairs. (Id. ¶ 24.) "Plaintiff never cashed that check because the concrete has not been dry enough to install the tile." (Id.) Plaintiff sent her engineer's findings to Siler. (Id. ¶ 25.) Universal sent their own engineers to inspect the property, and they generated a report on June 1, 2017. (Id.)

Siler called Plaintiff and told her that the tile could be installed even though the concrete was still wet, that the soil was wet because it was wet in all of Murrieta, and that the damage to the tile was due to its original faulty installation. (Id. ¶ 26.) "Plaintiff informed Siler that none of this was true." (Id.) Siler also told Plaintiff her engineer had reneged on the findings in his report. (Id.) After speaking with her engineer, who denied that he had reneged on his findings to Siler, "Plaintiff accused Siler of lying to her and intentionally low-balling the claim." (Id.) Universal denied Plaintiff's claim on July 12, 2017. (Id.)

In November of 2017, Plaintiff hired an attorney, who questioned Universal about its coverage decisions. (Id. ¶ 27.) In December 2017, Universal reopened the claim. It sent a new set of engineers to the property, and ultimately denied the claim again on July 31, 2018. (Id. ¶¶ 27, 28.) Plaintiff had the soil retested in August 2018 and found that it was still wet. (Id. ¶ 29.) She "has been unable to complete the necessary repairs due to the misrepresentations and low-balling tactics of Universal and its vendors." (Id. ¶ 30.)

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. As a general matter, the Federal Rules require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

**B. Motion to Remand and Fraudulent Joinder**

Pursuant to 28 U.S.C. § 1441(a), a defendant has the right to remove a matter to federal court where the district court would have original jurisdiction. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Federal district courts have original jurisdiction over civil actions in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). "Complete diversity" means that "each defendant must be a citizen of a different state from each plaintiff." In re Digimarc Corp. Derivative Litigation, 549 F.3d 1223, 1234 (9th Cir. 2008).

Removal statutes are to be strictly construed, Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992), and the party seeking removal bears the burden of proving its propriety, Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir.1996). See Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 683-85 (9th Cir. 2006); see also Calif. ex. rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004) ("[T]he burden of establishing federal jurisdiction falls to the party invoking the statute[.]"). "[A]ny doubt about the right of removal requires resolution in favor of remand." Moore–Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009) (citing Gaus, 980 F.2d at 566).

Removal is proper despite the presence of a non-diverse defendant where that defendant is a fraudulently joined or "sham" defendant. Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998). "There are two ways to establish fraudulent joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" GranCare, LLC v. Thrower, 889 F.3d 543, 548 (9th Cir.

2018) (quoting Hunter v. Phillip Morris USA, 582 F.3d 1039, 1044 (9th Cir. 2009)).  The Ninth Circuit has emphasized that "the test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent."  Id. at 549.  Rather than merely showing that the plaintiff has not alleged facts plausibly stating a claim for relief, a defendant must show that there is no "*possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants[.]"  Id. at 458 (internal quotation marks and citations omitted).  Thus, that a court would grant a motion to dismiss the claim is insufficient to establish fraudulent joinder.  Id. at 550.  "[T]he district court must [still] consider . . . whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend."  Id.  Defendants asserting fraudulent joinder bear a "heavy burden" because of the presumption against finding defendants were fraudulently joined.  Id. at 548.

### III.  DISCUSSION

In the Notice of Removal, Universal asserts that it is incorporated in Texas and has its principal place of business in Florida.  (NOR ¶ 5.)  It alleges Plaintiff and Siler are citizens of California, but that Siler was fraudulently joined to defeat complete diversity.  (Id. ¶¶ 4, 7.)  Universal further alleges that the amount in controversy exceeds $75,000.  (Id. ¶ 11.)  Thus, Universal argues, the Court has jurisdiction based on diversity of citizenship.  (Id.)  Plaintiff does not dispute Universal's allegations regarding any of the parties' citizenship.  (See MTR.)  Rather, she argues that Siler was not fraudulently joined and that Universal has failed to show the amount in controversy exceeds $75,000.  (Id. at 5–9.)  Because the Court determines Siler was not fraudulently joined, it does not reach the amount in controversy issue.

The Court considers first whether Plaintiff's claim against Siler would survive a motion to dismiss.  If it would, Siler is not a sham defendant, and the case must be remanded.  See GranCare, 889 F.3d at 550.  If the negligent misrepresentation claim against Siler would be dismissed, the Court must consider whether Plaintiff could cure the deficiency by alleging additional facts.  See id.  Only if Plaintiff could not possibly cure the deficiency may the Court find that Siler was fraudulently joined.  See id.  Because the parties have fully briefed the MTD, the Court considers their arguments for and against dismissal in determining whether Plaintiff has stated a claim against Siler upon which relief can be granted such that Siler was not fraudulently joined.

Universal argues Plaintiff's third cause of action for negligent misrepresentation, brought against all Defendants, should be dismissed for failure to state a claim.  (MTD at 9.)  To allege a claim for negligent misrepresentation, a plaintiff must plead "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage."  Wells Fargo Bank, N.A. v. FSI, Fin. Solutions, Inc., 196 Cal. App. 4th 1559, 1573 (Cal. Ct. App. 2011) (citation and internal quotation marks omitted).  Universal contends Plaintiff fails to plead either detrimental reliance or resulting damage.  (MTD at 10.)  In particular, Universal asserts "there is no possibility of the plaintiff

being able to plead justifiable reliance or a detriment of any kind" because "plaintiff alleges she relied upon her own experts." (Id. (citing Compl. ¶ 20).)

Plaintiff responds to Universal's reliance argument by asserting that "[a]n insured can rely on an agent's representations without independently verifying their accuracy." (MTD Opp. at 7 (citing Bock v. Hansen, 225 Cal. App. 4th 215, 231–32 (2014); Clement v. Smith, 16 Cal. App. 4th 39, 49 (1993)).) Plaintiff's response misapprehends Universal's argument. The issue is not whether Plaintiff's reliance was reasonable; it is whether she relied at all on any false statement made by Defendants. "To allege actual reliance on misrepresentations . . . , the plaintiff must plead that he believed the representations to be true and that in reliance thereon (or induced thereby) he entered into the transaction" or took or refrained from taking some action resulting in damages. Daniels v. Select Portfolio Servicing, Inc., 246 Cal. App. 4th 1150, 1168 (2016) (cleaned up).

Plaintiff cites five alleged misrepresentations made to her by Siler: 1) the tile could be installed even though the concrete was still wet; 2) the soil was wet because it was wet in all of Murrieta; 3) the damage to the tile was due to its original faulty installation; 4) Plaintiff's engineer reneged on the findings in his report; and 5) there was no coverage in the policy for the repairs and replacements needed. (MTD Opp. at 7 (citing Compl. ¶¶ 26, 45–47).) As to the first three statements, the Complaint alleges that "Plaintiff informed Siler that none of this was true." (Compl. ¶ 26.) With regard to the fourth, after speaking with her engineer, "Plaintiff accused Siler of lying to her and of intentionally low-balling the claim." (Id.) At no point in the Complaint does Plaintiff claim she later came to believe any of these four representations. Rather, Plaintiff relied on her own engineer's assessment and subsequently hired counsel because she disagreed with Defendants' position. (Id. ¶ 27.)

This leaves only the alleged misrepresentation in the July 12, 2017 denial letter that "there was no coverage in the policy for repair and replacement of the foundation, the continuous flooring, subfloors, water damaged construction materials, personal property damage, storage of personal property during repairs, and loss of use."[4] (MTD Opp. at 7 (citing Compl.

---

[4] In the MTR Opposition, Universal argues this allegation "is directly contrary to the allegations at page 4, lines 13-14, where plaintiff alleges she moved her personal property to a storage facility for which Universal began to reimburse her." (MTR Opp. at 9.) However, that Universal paid for storage of Plaintiff's personal property does not undermine the plausibility of Plaintiff's allegation that Defendants misrepresented that there was no coverage for repair and replacement of the foundation, the continuous flooring, subfloors, water damaged construction materials, personal property damage, and loss of use. Moreover, Defendants could have covered storage of certain property for a certain period, but later told Plaintiff there was no coverage for continued storage or storage of additional items.

Universal also argues the allegation of misrepresentation as to the scope of the coverage "is inconsistent with the allegation that Universal provided plaintiff with an estimate of repairs and in fact extended policy benefits of $17,603.87." (Id.) This argument appears to purposefully

¶¶ 26, 45–47.) Plaintiff alleges that, in reliance on Defendants' representations, she "accepted [Defendants'] low-ball estimate." (Compl. ¶ 48.) However, it is unclear how acceptance of Defendants' estimate caused her to "incur substantial additional costs[.]"[5] (Id. ¶ 52.) Accordingly, Plaintiff fails to state a claim for negligent misrepresentation against Siler.

The Court next considers whether Plaintiff could amend her Complaint to cure the deficiencies identified above. Because Plaintiff affirmatively alleged that she did not believe Siler's first four statements,[6] she cannot amend her Complaint to allege reliance on those statements without contradicting her current allegations. However, Plaintiff could allege additional facts explaining how she relied on the representation that the insurance policy did not cover certain repairs and replacements and how that reliance caused her damages beyond those she already suffered as a result of the leak. She could also amend her Complaint to allege additional misrepresentations.

Universal argues that, "[a]s in *Feizbakhsh* [*v. Travelers Commercial Ins. Co.*, 2016 WL 8732296 (C.D. Cal. Sept. 9, 2016),] [Plaintiff's] retention of independent experts establishes her lack of reliance upon any representation by Jerry Siler." (MTR Opp. at 10.) To the extent Universal argues leave to amend would be futile, the Court disagrees. The Feizbakhsh court considered the same question at issue here: whether an insurance agent named in a negligent misrepresentation claim had been fraudulently joined. 2016 WL 8732296, at *4. The Feizbakhsh plaintiffs "alleged that they retained counsel and an experienced construction estimator to advise

---

misconstrue the allegations in the Complaint. Plaintiff clearly alleges Universal's estimate included only tile replacement, drywall repair, and painting and excluded the expenses Plaintiff alleges Defendants misrepresented were uncovered by the policy. (See Compl. ¶ 23.)

[5] Universal argues Plaintiff has failed to allege physical injury or property damage, as required to state a claim against an insurance adjuster. (MTD at 10–11 (citing Bock v. Hansen, 225 Cal. App. 4th 215 (2014); Feizbakhsh v. Travelers Commercial Ins. Co., 2016 WL 8732296, at *1 (C.D. Cal. Sept. 9, 2016)).) Plaintiff responds that, as a result of Siler's misrepresentation regarding the cause of the damage to the tile, which ultimately led to the denial of the claim, she "could not close the holes into the foundation of the house that were cut by the engineers, thereby[] causing further damage to the foundation." (MTD Opp. at 9 (citing (Compl. ¶¶ 20–26, 30, 45–47).) As noted above, Plaintiff claims she did not believe Siler's misrepresentation about the cause of the damage to the tile. Further, Plaintiff appears to argue that Siler's misrepresentation to Universal regarding the cause of the damage caused Universal to deny her claim. However, negligent misrepresentation involves a plaintiff's reliance on misrepresentations made to her. In order to adequately plead her claim against Siler, Plaintiff must allege that her reliance upon a statement made by Siler caused her physical injury or property damage additional to that already caused by the leak.

[6] That is, 1) that the tile could be installed even though the concrete was still wet; 2) that the soil was wet because it was wet in all of Murrieta; 3) that the damage to the tile was due to its original faulty installation; and 4) that Plaintiff's engineer reneged on the findings in his report.

them during the Claim process." Id. at *8. The court determined that any claim of reasonable reliance was barred because "Plaintiffs relied on the professionals whom they engaged in assessing the statements made by Stone [(the insurance adjuster)], and . . . , based on that advice, rejected Stone's positions." Id. Likewise, here, Plaintiff may not amend her Complaint to allege reliance on Siler's first four alleged misrepresentations because she admitted that she never believed Siler, and instead trusted her own engineer. See supra. However, with regard to the alleged misrepresentation concerning the scope of coverage, Plaintiff does not allege she was represented by counsel at the time of that misrepresentation.[7] Rather, unlike in Feizbakhsh, Plaintiff did not retain counsel until roughly four months after her claim was rejected. (Compl. ¶¶ 26–27.) It is therefore possible that Plaintiff could allege reliance for some period of time prior to her discovery of the true extent of the coverage. It is further possible that such reliance, though temporary, caused her concrete harm. Moreover, the Feizbakhsh court did not consider that the plaintiff could amend to allege additional misrepresentations. For these reasons, the Feizbakhsh decision does not alter the Court's determination that Plaintiff could amend her Complaint to state a claim against Siler. Thus, Universal has not shown that Siler "cannot be liable on any theory." See Ritchey, 139 F.3d at 1318. The Court therefore concludes that Siler was not fraudulently joined. Because Plaintiff and Siler share California citizenship, complete diversity is lacking. There being no other alleged basis for federal subject matter jurisdiction, the Court REMANDS the case to state court.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's MTR and REMANDS the case to state court for all further proceedings. Universal's MTD and MTS are DENIED AS MOOT. The hearing scheduled for June 17, 2019 is VACATED. The Clerk is directed to close the case.

**IT IS SO ORDERED.**

---

[7] Plaintiff's engineer, while knowledgeable about the source of the damages and proper course for repairing the property, would presumably be unable to advise Plaintiff on the scope of coverage provided under her insurance policy. Thus, at the time of the fifth alleged misrepresentation, Plaintiff had no expert whose advice she could rely on regarding the scope of the coverage.